IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ELAINA WOODS                                                    PLAINTIFF

            v.            Civil No. 07-2065

GREGORY NAPIER; JOHNNY BOLINGER;
LOU DOE; and MIKE CONGER                                        DEFENDANTS

## O R D E R

Now on this 30th day of September, 2008, come on for consideration the following:

* **Motion For Summary Judgment By The Separate Defendants, Gregory Napier And Johnny Bolinger** (document #18);

* **Motion For Summary Judgment** (document #24) by Mike Conger;

* **Report And Recommendation Of The Magistrate Judge** ("R&R") (document #33); and

* plaintiff's **Objections To R&R** (document #34),

and from said documents, and the responses to the motions, the Court finds and orders as follows:

1.  Plaintiff Elaina Woods ("Woods") brought suit pursuant to **42 U.S.C. §1983**, alleging that she was subjected to excessive force during an arrest by Fort Smith Police Officer Johnny Bolinger ("Bolinger") while running to pick up her daughter from school.  She further alleges that Fort Smith Police Officer Gregory Napier ("Napier") came to Bolinger's assistance during the

arrest and also used excessive force.  Following her arrest, she alleges she was subjected to an illegal injection, sexually touched while receiving the injection, slandered, falsely charged with criminal mischief, unlawfully detained, denied bail, and pepper sprayed.

2.    Bolinger and Napier moved for summary judgment, asserting that they had probable cause to arrest Woods, that the force they used was reasonable and necessary under the circumstances, and that Woods' conviction on charges of disorderly conduct, refusal to submit to arrest, and criminal mischief preclude any claim of false arrest.  They further contend that allegations relating to the injection, sexual touching, slander, denial of bail, and pepper spraying are not addressed to them. Finally, they contend that they are immune from suit in negligence pursuant to **A.C.A. §21-9-301**, and that no claim against them in their individual capacity has or can be stated.

3.    Separate defendant Mike Conger ("Conger") also moved for summary judgment, stating that he had been made a party for the limited purpose of identifying the officers involved in using pepper spray on Woods, whereupon those officers would be substituted in his place.  He states that he has been unable to identify any officers who used pepper spray on Woods.  Conger contends that both he, and the allegations regarding pepper spraying, should be dismissed.

-2-

4.   The Magistrate Judge reported that, to the extent Woods claims she was falsely arrested, those claims are subject to dismissal because Woods was convicted of at least some of the charges upon which she was arrested and her conviction has not been reversed, expunged, invalidated, or called into question by the issuance of a writ of habeas corpus.  Thus, under **Heck v. Humphrey**, **512 U.S. 477 (1994)**, her claims for false arrest are premature.

Woods does not appear to contest this aspect of the R&R, and it will be adopted.

5.   The Magistrate Judge reported that excessive force was not used by Bolinger or Napier in effecting Woods' arrest, reasoning that some force was necessary and that Woods had only *de minimis* injuries.  He noted that Woods was running, crossed a busy street against the light, and -- although she initially stopped when Bolinger told her to -- returned to running and ignored his additional commands to stop.  When Bolinger grabbed Woods, she flailed her arms, yelled and screamed, and tried to get away.  She was perceived to be intoxicated[1].  The Magistrate Judge recommended that this claim be dismissed.

Woods objects to this portion of the R&R, contending that her documentation on this issue was not fully considered.  In light of

---

[1]Subsequent blood tests showed that Woods was not intoxicated or under the influence of any controlled substance.

-3-

this objection, the Court has reviewed the various documents submitted in connection with the Motion For Summary Judgment filed by Bolinger and Napier, and Woods' response to this motion and a previous motion for summary judgment as contained in questionnaires submitted to her by the Magistrate Judge to assist her in responding to the motions.

6.   The Court first considers whether Bolinger was justified in arresting Woods, for if he was not, then no amount of force would be justified in effecting the arrest.

It can be gleaned from the various documents submitted by the parties that the arrest occurred between 3:30 and 4:00 p.m. on April 19, 2007, when Woods approached the intersection of Rogers and Greenwood in Fort Smith, Arkansas, as she was hurrying to Fairview Elementary School to pick up her daughter.   Woods gave the following account of the incident:

> After moments of pressing the cross walk button with nothing happening, I became angry and started hitting the button harder.   I noticed an older guy walking towards me.   His Badge was on his belt.   He started the conversation with a funny statement "Ya know" "They say Paientce [sic] is a virtue."   I laughed and explained how I was running late picking up my daughter, and this button wasn't working.   His answer was, "what their [sic] not telling you is it no longer works.   "the new poles with the cross walk button was up and working now."   As I jumped over to the new pole to push button I notice an officerer [sic] walking up the sidewalk towards us, I had jumped back in place at the corner ready to run as soon as the light changed.   But still nothing was happening.   I kept asking, "Permission to go! permission to go!   "I can't wait for this light any longer!"   each time the path was clear to run across, I looked over at the older guy.   Pleading that I really

needed to go, permission to go?! at that moment traffic
was clear and the older guys head lowered in
acknowldgement [sic] of yes, and I took off running.
Out of the corner of my eye I could see that officer
(Bolinger) had reached closer to the corner and the
older guy.  I reached the other side, and got about 10
ft further when I heard "Hey Stop" I did stop, turned
around and said "what?  I have to go and that old man
gave me permission to cross when I did"  I turned back
around and started running again.  Within seconds I am
roughly grabed [sic] and my arm is shoved up behind my
back and a cuff was put on.  I jerk my hand out of the
cuff and tried to get away screaming I have to go.  We
struggled a bit when another officer (Napier) stepped in
and was roughly grabing [sic] me.  I was body slamed
[sic] to the ground with Bolingers [sic] body on top of
my back with his leg shoved up between my legs.

In an Arrest Narrative dated April 19, 2007, Bolinger gives

his version of the events in question.  He was at the intersection

of Rogers and Greenwood investigating a traffic accident at the

time, and states as follows:

I noticed a white female (Elaina Woods) standing on the
northwest corner of the intersection.  I began watching
Ms. Woods closer when I saw her frantically pressing the
crosswalk button and she appeared to be very agitated.
After speaking to one of the drivers involved in the
accident, I looked back toward Ms. Woods and saw her
hitting the crosswalk button with clenched fists and
screaming "I need to get across!" over and over again.
At this point, I started walking toward her to see if
she needed assistance, but before I made it to her
location, she darted into moving traffic and was nearly
struck by eastbound and westbound traffic on Rogers.  I
stopped traffic and ran after her, still not knowing
whether or not she had an emergency or not.  I
identified myself and told Ms. Woods to stop, at which
point she did in the 900 block of South Greenwood.  I
approached her and asked her if she was ok and she began
speaking very rapidly and screamed at me that she had
asked "that old man" for permission to run across the
road.  She was not making any sense so I asked her to
calm down and tell me what was wrong.  Ms. Woods then
turned and ran away from me at which point I told her to

-5-

stop, but she refused.  I caught up with her a short distance away and grabbed her arm to place her under arrest.  She began saying "Don't you do it, don't you do it" and pulling away from me.  I was able to place her in custody as Officer Napier arrived on scene to assist me, but Ms. Woods was able to pull one of her hands free from the cuffs, at which point she began trying to pull away from me again.  Officer Napier and I then forced her hands behind her back again and placed her hand back in the cuffs.

As can be seen, Bolinger did not stop Woods because he had any reason to think that she had committed a crime.  By his own account, he chased her and called out to her to stop because he was trying to determine whether she had an emergency and needed help.  In an Affidavit submitted in support of his motion for summary judgment, Bolinger averred that Woods appeared intoxicated when he stopped her.

In **Cady v. Dombrowski**, **413 U.S. 433 (1973)**, the Supreme Court recognized that local police officers sometimes "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." **413 U.S. at 441**.  It is suggested that Bolinger's arrest of Woods falls in this category.

The Eighth Circuit has found police legitimately engaged in community caretaking functions when investigating traffic accidents (**U.S. v. Smith**, **162 F.3d 1226 (8th Cir. 1998)**); arresting a person who appeared to be under the influence of a controlled substance and was in a position to drive a vehicle

(**Winters v. Adams**, **254 F.3d 758 (8th Cir. 2001)**); entering a residence without a warrant under the belief that an emergency existed (**U.S. v. Quezada**, **448 F.3d 1005 (8th Cir. 2006)**); and transporting an arrestee to the hospital based on incoherent speech and confused conduct (**Samuelson v. City of New Ulm**, **455 F.3d 871 (8th Cir. 2006)**).

**Quezada** informs the Court as to the level of concern that will support police activity based on the community caretaking function.  The court there held that a deputy sheriff was justified in making a warrantless entry under the community caretaking function, when he went to serve a warrant, knocked on a door that swung open because it was unlatched, and found lights and a television on, but no one came to the door.  If this situation, so seemingly nonemergent, can justify exercise of the police community caretaking function, then the facts in the case at bar do as well:

    *   Woods was running;

    *   she appeared frantic at the delay imposed by the traffic light;

    *   she crossed against the light;

    *   she paused, but only briefly, and then resumed running when Bolinger told her to stop; and

    *   Bolinger perceived her as being intoxicated.

Bolinger could reasonably have determined that Woods posed a

risk both to herself and to passing traffic if this conduct were repeated.  While it would have been preferable from the standpoint of community caretaking, and considerably more helpful to Woods, had Bolinger offered Woods a ride to the elementary school[2] to pick up her daughter rather than arresting her, the Court cannot say that Bolinger's conduct fell outside that approved by the Eighth Circuit in the foregoing cases when he stopped Woods to question her.

7.   Having concluded that Bolinger was justified in stopping Woods, the Court turns to the issue of whether he and Napier used excessive force in effecting her arrest.

Excessive force claims are analyzed under the Fourth Amendment reasonableness standard, which requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." **Graham v. Connor**, **490 U.S. 386, 396 (1989)**.  The issue is "objective reasonableness" when "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  **Id.**

Considerations include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the arresting officers or others, and whether he is actively resisting

---

[2]According to Bolinger, the school was "a considerable distance from Rogers Avenue and Greenwood.

arrest or trying to flee.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." ***Id.***

In the case at bar, Woods concedes that she began running again after first stopping when Bolinger told her to stop; that she was drooling, growling, and babbling; that she flailed her arms when Bolinger was placing her in handcuffs; that she struggled with the officers; and that she was able to get one hand out of the handcuffs by her struggles.  It is clear from the degree of resistance she put up, that Bolinger and Napier would not have been able to place Woods under arrest without some use of force.

Woods contends that she suffered bruising from the arrest and the events at the hospital.  Bolinger and Napier do not appear to dispute that Woods sustained some bruises in the course of the arrest, Bolinger averring that Woods "received minor injuries from the arrest." Bolinger and Napier both submitted affidavits, in which they aver that the tactics they used to subdue Woods were standard moves they were trained to use, including wrist lock, arm bar, and placing a knee between an arrestee's legs to gain leverage and control.

Woods makes no showing of the severity of any bruising,

although she had time to take photographs of any noticeable bruises after she was released, since according to her it took a week for the bruises to "lighten up."  She also offers nothing from which it can be determined whether any bruising was the result of her arrest, or of later events in the hospital when she admittedly struggled wildly to avoid being given an injection and had to be held down by several people.  Given the evidence of Woods' struggles in resisting both her arrest and the injection, there is little room for doubt that Woods' own conduct contributed to her injuries.  Injuries attributable to a plaintiff's own actions do not demonstrate excessive use of force by police. **Greiner v. City of Champlin**, 27 F.3d 1346 (8th Cir. 1994).

Woods also complains of injury to her arm from having it pulled up behind her.  She contends that her arm still gives her pain.  There is, however, no medical evidence to support her claim of arm injury.  A plaintiff's allegations of pain, without evidence of long-term injury, are not sufficient to support a claim of excessive force.  **Foster v. Metropolitan Airports Commission**, 914 F.2d 1076 (8th Cir. 1990).

Thus, while the facts indicate that Woods experienced some degree of injury during her arrest, her own struggles contributed to the situation, and the evidence does not indicate injury that rises above the level of a *de minimis* injury, which will not support an excessive force claim.  **Crumley v. City of St. Paul,**

-10-

**Minn.**, 324 F.3d 1003, 1007 (8th Cir. 2003).

Woods also contends that she suffered mental anguish as a result of the incident.   Although the Curt has no doubt the situation caused Woods considerable mental anguish, without first establishing that she was subjected to excessive force this type of damages cannot be considered.  **Bauer v. Norris**, **713 F.2d 408 (8th Cir. 1983).**

For the foregoing reasons, the Court concludes that the Magistrate Judge was correct in recommending that Woods' excessive force claim should be dismissed.

8.   With regard to Conger's Motion For Summary Judgment, the Magistrate Judge reported that Conger had been unable to identify any officers involved in using pepper spray on Woods, because there were no incident reports about such an event and Amanda Sowa, the booking officer, had no recollection of any pepper spraying incident.   Further, the Magistrate Judge reported that Woods had failed to exhaust her administrative remedies before filing suit.   He recommended dismissal of Woods' pepper spray claim.

The Court does not find Woods' failure to exhaust administrative remedies fatal to her claim.   The Prison Litigation Reform Act ("PLRA") provides that no action shall be brought with respect to prison conditions under **42 U.S.C. §1983** "by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."
Woods was not a "prisoner confined" when she brought this action.
She was a prisoner released[3], and the PLRA does not bar her suit.
**Kerr v. Puckett, 138 F.3d 321 (7th Cir. 1998).**

In her Objections to the R&R, Woods contends that "there is
no acknowledgement [sic] of any of the documental proof of Sowa's
. . . lies & coverups that was attached to the end of questionaire
[sic]."  That documentation reflects that Woods was returned from
the hospital (under the influence of the injection of Ativan, a
sedative which diminishes the ability to recall, see **Physicians'
Desk Reference, 1995 Ed.**) at 7:17 p.m. on April 19, 2007.  She was
allowed to take a shower, and then taken to a cell.  She describes
the incident as follows:

> After my shower, I was escorted out, walked a short
> distant [sic] and was shoved into a room.  When I caught
> my balance and turned around asking what they did that
> for, I was pepper sprayed.
> Because I was pretty loopy by that time cause of
> the shot they gave me was now in full effect making
> everything and everybody look fuzzy, so I could not
> clearly see the officers that escorted me from shower,
> shoving me in room and pepper spraying me.  And was
> unable to see anything period after being sprayed.
> Sowa is the one who supervised my shower.  So she
> would know which officers escorted me from shower.
> Was she one of them who personally escorted me from
> shower?  Or did she just supervise it?
> Clearly, either way, she has knowledge of me being
> pepper sprayed.
> For the simple fact that she could not continue
> with her intake questionaire [sic] forms because I could

---

[3]Woods states that she was released shortly after midnight following her booking
on April 20, 2007.  Suit was filed on June 22, 2007.

-12-

no longer see at that moment.
I was on my knees screaming holding my eyes.
I was then escorted to a different room where I was
left.

Sowa signed an Intake Form showing the Intake Time as 7:43 p.m. on April 19, 2007, but a mug shot of Woods was not taken until 9:40 a.m. on April 20, and Woods' Prisoner Booking Record was not completed until 3:29 p.m. on April 20.  As explained by Woods, "17 1/2 hrs later after being pepper sprayed I was seeing somewhat so Sowa continued with her intake questionaire [sic] forms.  I was signing them on the 20th at 4 pm."

This timeline -- booking delayed for almost a full day after arrest -- raises a genuine issue of material fact about the allegation of pepper spraying.  Coupled with Woods' statements about the matter, and viewed in the light most favorable to Woods as the nonmoving party, the Court concludes that a jury could find that Woods was pepper sprayed by an employee of the Sebastian County Adult Detention Center while she was sedated.

Sowa's involvement in supervising Woods' shower and booking her in, and the fact that Woods had two cellmates with whom she allegedly discussed being pepper sprayed, indicate that evidence exists which will have bearing on the allegation of pepper spraying but has yet to be explored.  The Court will, therefore, sustain Woods' Objection to theR&R insofar as it pertains to the allegation of pepper spraying, and remand that issue to the Magistrate Judge for further proceedings to determine if an

identity can be established for:

    *    the person or persons who assisted with Woods' shower on April 19, 2007;

    *    the person or persons who escorted Woods to a cell on that date; and

    *    Woods' cellmates with whom she allegedly discussed the pepper spraying and the condition of her eyes during the remainder of her incarceration.

If such evidence is developed, the Magistrate Judge should consider conducting an evidentiary hearing to determine if it is sufficient to merit trial on the issue.

    9.    The Magistrate Judge recommended that Woods' claims against defendant Lou Doe be dismissed without prejudice, because Woods has never been able to identify Doe.  Woods does not object, and the R&R will be adopted as to this defendant.

    10.    Woods' claims of slander, sexual touching, and denial of bail do not specifically implicate any of the named defendants, and the recommendation that these be dismissed is well taken, and will be adopted.

    11.    Regarding the forcible injection of Ativan that Woods received at Sparks Regional Medical Center, the Affidavit of Napier states that it was given "with the assistance of 5-6 Sparks' staff."  Woods says she was held down by "both hosp. staff and P.D. to give shot."  The medical records -- to the extent the

-14-

handwriting can be made out -- appear to support Woods on this point.  That does not equate with proof of her claim, however. For one thing, the abbreviation "pd" in the medical records is not specifically shown to relate to Bolinger or Napier, or even to Fort Smith police officers in general.

More importantly, Woods admits she was struggling furiously because she did not want the injection, which had been ordered by a physician.  Woods offers no theory by which the defendants can be held liable for assisting in medical treatment ordered by a physician when treating an arrestee who is struggling violently.

For these reasons, the R&R will be adopted as it treats of Woods' claim against Napier related to events at Sparks Regional Medical Center, and that claim will be dismissed.

IT IS THEREFORE ORDERED that the **Report And Recommendation Of The Magistrate Judge** (document #33) is **adopted** in all respects except with insofar as it treats of Woods' claim against Mike Conger.

IT IS FURTHER ORDERED that plaintiff's **Objections To R&R** (document #34) are **sustained** insofar as they relate to her claims that she was pepper sprayed while incarcerated at Sebastian County Adult Detention Center, and **overruled** in all other respects.

IT IS FURTHER ORDERED that the **Motion For Summary Judgment By The Separate Defendants, Gregory Napier And Johnny Bolinger** (document #18) is **granted,** and Woods' claims against these

-15-

defendants are **dismissed with prejudice.**

    **IT IS FURTHER ORDERED** that plaintiff's claim against Lou Doe is **dismissed without prejudice.**

    **IT IS FURTHER ORDERED** that Mike Conger's **Motion For Summary Judgment** (document #24) is **denied,** and this matter is **remanded** to the Magistrate Judge for further proceedings on Woods' claim against this defendant consistent with this Order.

    **IT IS SO ORDERED.**

                   **/s/ Jimm Larry Hendren**
                   **JIMM LARRY HENDREN**
                   **UNITED STATES DISTRICT JUDGE**